106 June 5, 2024 No. 382

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KELLI ELIZABETH GRENNELL,
*Defendant-Appellant.*

Polk County Circuit Court
22CR18312; A180189

Monte S. Campbell, Judge.

Submitted April 24, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Colm Moore, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

Defendant was convicted of resisting arrest and attempted assault on two public safety officers. On appeal, she raises two assignments of error, both unpreserved. First, she argues that the prosecutor's handling of *voir dire* denied her a fair trial. Second, she argues that the trial court plainly erred by failing to instruct the jury that, to find defendant guilty of resisting arrest, it had to find that she was at least criminally negligent as to a "substantial risk of physical injury." For the following reasons, we affirm.

*Voir dire.* During *voir dire*, some prospective jurors described negative encounters with police officers. One described being falsely accused of a traffic violation and contesting it. Another described being falsely accused of, but not charged with, crashing her car and then reporting it stolen. In that context, the prosecutor asked Juror 2 whether Juror 2 thought that "when we get charges we just pursue them very quickly." Juror 2 answered no. The prosecutor asked, "How much do you think we do before we go to trial?" Juror 2 answered that there was probably a lot of leg work, depending on the charges, and hopefully talking to witnesses and the police. The prosecutor added, "Yeah, watch body camera footage, have photos, all of that?" Any response to that question was nonverbal. The prosecutor continued, "Does anyone think we don't do that? Do you think we would go to trial if we didn't believe it was true?" An unidentified juror answered, "Depends what city you're in." The prosecutor said, "That's fair," and suggested, "What about here? Chicago? Maybe." An unidentified juror (perhaps the same one) said, "San Francisco." The prosecutor then moved to a different subject.

On appeal, defendant argues for the first time that the prosecutor's handling of *voir dire* denied her a fair trial. Because defendant did not object in the trial court, our review is limited to plain error. ORAP 5.45(1); *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (an error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences). In the plain-error context, a conviction may be

reversed based on prosecutorial statements to the jury only "if it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (addressing prosecutorial statements in closing argument) (internal quotation marks omitted). Further, "we may reverse on plain-error review only if the statements were so egregious that striking them or giving a curative instruction would have been insufficient." *State v. Durant*, 327 Or App 363, 365, 535 P3d 808 (2023); *see also State v. Soprych*, 318 Or App 306, 307, 507 P3d 276 (2022) (holding, albeit in a preserved posture, that a prosecutor's statements in *voir dire* necessitated a mistrial).

Here, we are unpersuaded that the prosecutor's statements rose to that level. The prosecutor's statements indicated that the state would not prosecute a case without investigating it and believing "it was true." There is a degree to which jurors are likely to assume that the state believes it can prove its case. Putting that in terms of the state "believ[ing] it is true" is problematic, however, as it could be perceived as vouching for the state's witnesses. Had an objection been made, the state could have clarified, or given the generality of the remark, the trial court could have given a curative instruction. Any impropriety was not so egregious as to deny defendant a fair trial and require a mistrial. *Cf. Chitwood*, 370 Or at 314-17 (in rebuttal closing, the prosecutor relied on facts not in evidence, encouraged the jury to decide the case on an improper basis, and distorted the state's burden of proof); *State v. Pierpoint*, 325 Or App 298, 306-08, 528 P3d 1199 (2023) (in rebuttal closing, the prosecutor implied that a grand jury had already determined the defendant's guilt and improperly commented on the defendant's decision not to testify); *Soprych*, 318 Or App at 311 (during *voir dire*, the prosecutor undermined the presumption of innocence and conditioned the jury to believe that the defendant was obviously guilty). We reject defendant's first assignment of error.

*Jury instruction.* Defendant argues, the state concedes, and we agree that the trial court plainly erred by failing to instruct the jury that, to find defendant guilty of

resisting arrest, it had to find that she acted with at least criminal negligence as to the "substantial risk of physical injury" element of the crime. *See State v. Tow*, 321 Or App 294, 298, 515 P3d 936 (2022) ("In light of recent cases on the law of culpable mental states, we conclude that the trial court plainly erred when it did not instruct the jury that it had to find that defendant acted with a culpable mental state with respect to 'the substantial risk of physical injury' element in ORS 162.315(2)(c)."). We agree with the state, however, that the error was harmless and thus not a basis for reversal of defendant's conviction. *See State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023) ("We cannot reverse a judgment based on a harmless error[.]").

A person acts with criminal negligence when the person "fails to be aware of a substantial and unjustifiable risk that the result will occur" and the risk is "of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). In assessing whether omission of a mental-state instruction was harmless, "the issue is not whether a jury *could* have found defendant to have the requisite mental state on this record; rather, it is whether there is some likelihood that the jury might *not* have been persuaded that he had the requisite mental state, had it considered that issue." *State v. Stone*, 324 Or App 688, 695, 527 P3d 800 (2023) (emphases in original)).

In this case, the resisting arrest charge was based on the same conduct as the charges for attempted assault on a public safety officer. In finding defendant guilty of attempted assault, based on the instructions that it received on attempted assault, the jury necessarily found that defendant consciously chose to engage in that conduct and intentionally attempted to cause physical injury to the two police officers. Under the circumstances, there is no meaningful likelihood that, had the jury been properly instructed on the mental-state requirement for the "substantial risk of physical injury" element of resisting arrest, it would have found that she was not criminally negligent as to that element. *See State v. Owen*, 369 Or 288, 324, 505 P3d 953 (2022) (the

jury's findings that the defendant knew that his conduct was assaultive and "readily capable of causing serious physical injury" indicated that it would not have found that he was unaware that his conduct created a risk of physical injury). We reject the second assignment of error.

Affirmed.