No. 19     May 1, 2025     591

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

IVAN ROSALIO MENDEZ PEREZ,
aka Ivan Rosalio Mendez-Perez
*Respondent on Review.*

(CC 20CR69674) (CA A175803) (SC S070384)

En Banc

On review from the Court of Appeals.*

Argued and submitted March 14, 2024.

Shannon T. Reel, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Brett J. Allin, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

DeHOOG, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

Bushong, J., concurred and filed an opinion, in which James, J., joined.

_____

* Appeal from Linn County Circuit Court, Rachel Kittson-MaQatish, Judge. 326 Or App 308 (2023) (nonprecedential memorandum opinion).

## DeHOOG, J.

In this criminal case, defendant argued in the Court of Appeals that, by not intervening *sua sponte* to correct or otherwise address certain aspects of the prosecutor's rebuttal closing argument, the trial court had plainly erred, warranting reversal. *State v. Perez*, 326 Or App 308, 309 (2023) (nonprecedential memorandum opinion). While that matter was pending, but before the Court of Appeals had rendered its decision, this court issued its opinion in *State v. Chitwood*, in which the court clarified its approach to plain-error review under such circumstances. 370 Or 305, 518 P3d 903 (2022). *Chitwood* held that, as in the context of a preserved error, a defendant asserting plain error based upon purportedly improper jury arguments must show not only that the prosecutor's comments were "improper," but also that they were "so prejudicial as to have denied [the defendant] a fair trial." *Id.* at 312. That, the court stated, requires a defendant to show that an instruction to disregard the prosecutor's improper statements would not, considering all of the circumstances, have been "sufficiently curative to assure * * * a fair trial." *Id.*

Following the framework of *Chitwood*, the Court of Appeals first concluded that, because the prosecutor's arguments had, in its view, effectively commented on defendant's invocation of the right to a jury trial and distorted the presumption of innocence, those comments were "obviously improper[.]"[1] *Perez*, 326 Or App at 309-10. The court then concluded, based upon perceived similarities between this case and *Chitwood*, that those comments had been "so prejudicial" that they denied defendant a fair trial—that is, no curative instruction would have sufficed to render defendant's trial fair, had one been given. *Id.* at 310. The state petitioned for review, which we granted.

---

[1] Defendant in this case argued on appeal that three comments made by the prosecutor during rebuttal argument met the *Chitwood* standard for plain-error review:

1. "I think oftentimes when you have [t]rial, [the] jury might have a misconception about the purpose of [t]rial."

2. "Just because there is a [t]rial doesn't necessarily mean there's a controversy of fact."

3. "[T]he [s]tate also in this justice system is entitled to due process of your consideration."

On review, the state does not dispute that *Chitwood* provides the proper analysis. It contends, however, that the prosecutor's jury arguments in this case were not improper, much less so prejudicial that an appropriate curative instruction could not have assured defendant a fair trial. Defendant, on the other hand, contends that the Court of Appeals correctly applied *Chitwood*; however, somewhat echoing observations in other decisions by that court, defendant suggests a need for, at a minimum, further clarification.[2] As we will explain, it is ultimately unnecessary to refine *Chitwood*'s analysis to decide this case; we conclude, however, that the Court of Appeals erred in concluding that the prosecutor's comments here were plainly improper and, under *Chitwood*, warranted reversal of defendant's convictions on plain-error grounds. We therefore reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

## I.   BACKGROUND

### A.   *Factual and Procedural History*

The following facts are undisputed for purposes of review. After receiving a report that defendant was "being loud and yelling" in the parking lot of a Fred Meyer store, Pendleton, an asset protection specialist, approached defendant, showed him her badge, and asked him to leave the property. Defendant did not leave, and about an hour later, Pendleton reapproached defendant with a colleague and again asked him to leave. When defendant again refused, Pendleton called the police. After Pendleton hung up the phone, defendant walked up to Pendleton and told *her* to leave the property, and, when Pendleton declined, defendant screamed in her face. Defendant then hit and pushed Pendleton with a piece of cardboard and attempted to touch her arm with a lit cigarette. Defendant began to walk away, then turned back around and ran toward Pendleton and her colleague. A customer intervened and tackled defendant to the ground, and another customer held him down.

Police arrived and handcuffed defendant. As they walked defendant towards their patrol car, defendant broke

---

[2] *See, e.g., State v. Smith*, 334 Or App 89, 95 n 1, 554 P3d 817 (2024) (observing certain "challenges" arising from *Chitwood*).

free and tripped one of them. Another officer told defendant to "just walk," at which point defendant turned around and yelled at that officer. Defendant appeared to have then tripped himself, falling down and bringing both officers to the ground with him.

The state charged defendant with one count each of second-degree disorderly conduct, second-degree criminal trespass, harassment, and resisting arrest. At defendant's trial, the state elicited testimony from Pendleton, the arresting officers, and other witnesses to the incident. The state also introduced video footage of the incident captured by a store security camera, as well as by police body and patrol-car cameras.

Defendant testified on his own behalf. On direct examination, defendant testified that he did not clearly remember the incident at Fred Meyer because he had been "alcoholically intoxicated." Defendant did not recall hitting or pushing Pendleton with a piece of cardboard or trying to touch her arm with a lit cigarette. Defendant did concede, upon reviewing the video footage of the incident, that he had "acted inadequate and disorderly and therefore *** was charged with Harassment." But defendant appeared to challenge one aspect of the resisting arrest charge when he asserted that the responding officers had not initially identified themselves. "I wasn't aware" of their identities, defendant testified, "so I resisted arrest." Pressed by the prosecutor on cross-examination, defendant "recognized" that he had "resist[ed] arrest." Defendant further testified, somewhat contrary to his testimony on direct, that he had not acted disorderly. He stated, "I wasn't screaming. I wasn't yelling," and said that he had refused to leave the parking lot because he "wasn't doing anything wrong." Defendant also testified that he did not believe at the time of the incident that Pendleton had the authority to order him to leave.

In defendant's closing argument, defense counsel told the jury that he "want[ed] to point out right from the get-go [that] there's been some evidence on some charges, I think, and then on other charges not so much. And so just because a person's guilty of one charge doesn't mean they're guilty of another charge." Defense counsel then addressed

each of the charges against defendant, questioning whether the state had met its burden of proof.

In the state's rebuttal, the prosecutor began by characterizing defense counsel's argument as "geared toward the psychology of a jury," but that "[r]eally what the jury's job is to do is due consideration of every single charge." The prosecutor then commented that the state "also in this justice system is entitled to due process of your consideration."

> "[Defense counsel] suggested that [defendant] might be guilty of some but not all. That phenomen[on], that sort of argument is geared toward the psychology of a jury doing things (inaudible), that maybe you'll return some guilty verdicts here (inaudible). Really what the jury's job is to do is due consideration of every single charge. The repercussions of whether he's guilty or not, you'll see that falls on the [j]udge later on.

> "For you, it's to determine if each of those offenses, in fact, occurred. And so please give each of those offenses their due consideration to determine whether they, in fact, occurred in the way that they're charged and that he's guilty of them or not guilty of them. *The [s]tate also in this justice system is entitled to due process of your consideration.* So please review each of those charges and take a look at them."

(Emphasis added.)

Toward the end of the rebuttal, the prosecutor commented that "oftentimes" the jury "might have a misconception about the purpose of [t]rial." Explaining that "[e]very person" has a right to trial and that the state has the burden of proof, the prosecutor "submit[ted]" that the state had met its burden in this case, and that "[j]ust because there is a [t]rial doesn't necessarily mean there's a controversy of fact."

> "*I think oftentimes when you have [t]rial, [the] jury might have a misconception about the purpose of trial.* The [t]rial is this. Every person has the absolute right to a criminal [t]rial in every case. That should be celebrated. The state should have the obligation of proving the case to the jury. In this case, the [s]tate submits to you that it has demonstrated that evidence through the production of the

testimony. Every element is satisfied. *Just because there is a [t]rial doesn't necessarily mean there's a controversy of fact.* Everybody has a right to trial. I think we should celebrate this process, and I think you should go back and deliberate and return a guilty verdict to every charge. Thank you."

(Emphases added.)

Following those comments by the prosecutor, defendant did not object, move to strike, request a curative instruction, or move for a mistrial.

After deliberating, the jury unanimously voted to convict defendant of each of the charged offenses. Defendant appealed.

On appeal, defendant argued that the trial court had plainly erred by failing to address the prosecutor's comments *sua sponte* by striking them, issuing a curative instruction, or declaring a mistrial. Defendant identified three of the prosecutor's comments that, in his view, were improper:

1.  "I think oftentimes when you have [t]rial, [the] jury might have a misconception about the purpose of [t]rial."

2.  "Just because there is a [t]rial doesn't necessarily mean there's a controversy of fact."

3.  "[T]he [s]tate also in this justice system is entitled to due process of your consideration."

According to defendant, those comments had deprived him of a fair trial because they "encouraged the jury to draw a negative inference" from his exercise of the right to trial and because they "shifted the burden of proof to the defense."

In its answering brief, the state argued that defendant had not demonstrated plain error. In relevant part, the state argued that it was not "beyond dispute that the prosecutor's arguments were improper, and even if they were, it is not beyond dispute that those comments denied defendant a fair trial." *See generally State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (for a claimed error to be "plain," it must be (1) an error of law; (2) obvious and not reasonably in dispute; and (3) apparent on the record). Further, the state argued, even if the prosecutor's comments were

"indisputably impermissible," the trial court "could have cured any impropriety with a curative instruction" had defendant requested one.

After the state filed its answering brief in the Court of Appeals, this court issued *Chitwood*. As in this case, the defendant in *Chitwood* raised an unpreserved challenge on appeal to comments that the prosecutor had made as part of the state's rebuttal argument. 370 Or at 309. The defendant argued that those comments were so prejudicial that the trial court had plainly erred by not issuing a curative instruction or declaring a mistrial *sua sponte*. *Id.* Reasoning that, for such an alleged error to warrant reversal in a preserved posture, a defendant would have to show that the trial court's refusal to take corrective action had denied the defendant a fair trial, we explained that it was likewise "not enough" in the plain-error context for the defendant to show that the prosecutor's comments were "improper." *Id.* at 311-12 (explaining that, because a trial court's refusal to take corrective measures ordinarily is evaluated for an abuse of discretion, reversal is not warranted unless comments are so prejudicial as to have denied the defendant a fair trial (citing *State v. Davis*, 345 Or 551, 582-83, 201 P3d 185 (2008))). Rather, to satisfy the plain-error requirements that the alleged error be both an error of law and beyond reasonable dispute (there being no dispute that it appeared on the record), the defendant was required to show that the prosecutor's comments "were so prejudicial as to have denied [him] a fair trial." *Id.* And to do that, the court held, the defendant had to show that "an instruction to disregard" the prosecutor's comments would not have been "sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *Id.*; *see also id.* at 321 (concluding that prosecutor's comments in that case met that standard); *id.* at 322, 329 (concluding that the "gravity of the error" and the "ends of justice" required this court to exercise its discretion to reverse the defendant's convictions (citing *Vanornum,* 354 Or at 630)).

In a nonprecedential memorandum opinion, the Court of Appeals held that defendant had demonstrated plain error and exercised its discretion to correct the error.

*Perez*, 326 Or App at 310. The Court of Appeals concluded that the prosecutor's comments were "obviously improper" because they "impermissib[ly] comment[ed] on defendant's invocation of the constitutional right to trial" and "distort[ed] the presumption of innocence." *Id.* at 309-10. Moreover, the court concluded that the prosecutor's comments had deprived defendant of a fair trial because "the presumption of innocence is fundamental to the American justice system, the misstatements were made at the end of rebuttal, and the prosecutor compounded the error by arguing that the state is also entitled to due process." *Id.* at 310 (internal quotation marks omitted). "Given the gravity of the errors," the court then exercised its discretion to correct the error, reversing defendant's convictions and remanding the case to the circuit court for a new trial. *Id.*

The state petitioned this court for review, contending that the Court of Appeals had erred in concluding that defendant had demonstrated plain error. We allowed the state's petition.

## II.   ANALYSIS

The issue on review is whether defendant has established plain error warranting reversal of his convictions. That requires us to determine (1) whether an error occurred in the trial court and the error was "plain," and (2) assuming the presence of plain error, whether this court should exercise its discretion to correct that error. The state argues, as it did in the Court of Appeals, that the requirements of plain error are not met here, because it is not obvious and beyond reasonable dispute that the prosecutor's comments were improper. The state adds that, even if the comments were improper, a curative instruction by the trial court would have cured any prejudice they caused. And under *Chitwood*, the state argues, that means that the asserted error is not cognizable on plain-error review. Defendant counters that the prosecutor's comments unconstitutionally shifted the burden of proof, alluded to facts not in evidence, and effectively amounted to impermissible vouching, which, defendant contends, makes them closely analogous to the comments that were deemed impermissible and incapable of being cured in *Chitwood*, leading this court to find plain

error. Defendant argues that we should likewise find plain error here and, as in *Chitwood*, exercise our discretion to correct the error by reversing his convictions.

Because the Court of Appeals found *Chitwood* instructive as to both the question of plain error and the issue of whether to exercise its discretion to correct that error, we begin by discussing that case and its approach to plain error in a case like this, where a defendant asserts an unpreserved claim that a prosecutor's impermissible comments to the jury have resulted in reversible error. As we will explain, we ultimately conclude that, when considered in context, the prosecutor's comments, while ill-advised, were *not* indisputably impermissible, as they must be before any error allegedly resulting from them can be deemed obvious and beyond reasonable dispute. *See Vanornum*, 354 Or at 629 (listing, as one of three predicates to finding plain error, that the asserted error be "obvious and not reasonably in dispute"). Thus, we need not determine whether the asserted error might otherwise have satisfied *Chitwood*'s recently announced requirement that, to give rise to plain error, a prosecutor's improper jury argument must have been so prejudicial that no curative instruction would have been sufficient to ensure a fair trial. 370 Or at 312. However, given *Chitwood*'s recent issuance and its perceived similarity to this case, we will begin with a summary of that decision and its approach to plain-error review, after which we will explain our conclusion that defendant has not established that the prosecutor's statements gave rise to plain error here.

A.   State v. Chitwood

In *Chitwood,* as in this case, the defendant argued on appeal that the trial court had committed plain error by not addressing *sua sponte* certain comments that the prosecutor had made during the state's rebuttal argument. 370 Or at 309.  In arguing that the state had met its burden of proof as to the defendant's alleged sexual offenses against his stepdaughter, the prosecutor had distinguished those allegations from those that a prospective juror had described during *voir dire*. *Id*. at 308. As the prosecutor summarized, the accusations against the prospective juror never went to trial, because they "washed out at the forensic interview stage * * *

because [they were] false"; the prosecutor contrasted those circumstances from the defendant's charges, asserting that "*this* is not false."[3] *Id.* (emphasis added). And at the end of the rebuttal, the prosecutor argued that if, based upon the evidence at trial, the jury was persuaded that the defendant "should not reside with an adolescent girl," that would mean that the state had met its burden of proving the defendant's guilt beyond a reasonable doubt.[4] *Id.* at 309.

Like defendant in this case, the defendant in *Chitwood* did not object to the prosecutor's rebuttal argument, request a curative instruction, or move for a mistrial. *Id.* Nonetheless, the defendant appealed, arguing that the prosecutor's comments had been so prejudicial that the trial court's failure to intervene *sua sponte* by issuing a curative instruction or declaring a mistrial constituted plain error. *Id.*

Although it did not expressly decide whether the trial court's nonresponse to the asserted "prosecutorial misconduct" amounted to plain error, the Court of Appeals in *Chitwood* acknowledged that the prosecutor had made an "impermissible plea" to the jury to decide that case on an improper basis—how it felt about the defendant rather than what the evidence had established. *Id.* However, given the plain-error posture of the defendant's appeal, the court recognized that, if it found plain error, it would then have to decide whether to exercise its discretion to correct that error. *Id*. at 309-10; *see generally Ailes v. Portland Meadows,*

---

[3] In *voir dire*, the prospective juror had suggested that the doctor who had examined the alleged victim in his case had concluded that no abuse had occurred. *Chitwood*, 370 Or at 308. In recounting that discussion, the prosecutor stated:

"The things that I want to cover with you is [*sic*] do you remember Mr. Strong, our juror that said he was falsely accused and he described to you that his false accuser was washed out at the forensic interview stage? I don't know if you all remember that but he claimed he had been falsely accused of a sex crime and she washed out because it was false. And this is not false."

[4]     The prosecutor stated, in full:

"I want to talk to you about moral certainty because that's the threshold. Deep down in your core is your moral core and that's where you're deciding this case from. Moral certainty. And if, after considering all the evidence, and again, I encourage you to listen to and look at everything that you see here today. Based on the evidence presented to you, without bias or sympathy for anyone, if you determine that [the defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt."

*Inc.*, 312 Or 376, 382, 823 P2d 956 (1991) (when an appellate court determines that a claimed error satisfies the requirements for plain error, the court must decide as a matter of discretion whether to correct the error); *see also Vanornum*, 354 Or at 630 (decision whether to correct plain error is a "prudential call that takes into account an array of considerations, such as the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice in the particular case").

Moving directly to that discretionary determination, the Court of Appeals decided for two reasons that, even if it were to find plain error, it would not exercise its discretion to correct it. *Chitwood*, 370 Or at 310. First, as our opinion explained, the Court of Appeals "stated, without elaboration, that the record did not compel the conclusion that [the] defendant had been denied a fair trial." *Id*. Second, that court reasoned that, because defense counsel may have been satisfied with the way that the trial was otherwise going and may, in any event, have not wanted to draw the jury's attention to the prosecutor's improper statements, counsel may have made a strategic decision not to object or request a mistrial. *Id*. (noting the Court of Appeals' reliance for that reasoning on *State v. Fults*, 343 Or 515, 173 P3d 822 (2007)). Accordingly, the Court of Appeals affirmed the trial court.

On review, we reversed. *Chitwood*, 370 Or at 329. Describing the prosecutor's comments as referring to facts not in evidence, distorting the burden of proof, and encouraging the jury to decide the case on an improper basis, *see id*. at 314-17, we concluded that those comments were not only "impermissible," but, "taken together, were so egregious that they deprived [the] defendant of a fair trial." *Id*. at 307.

The prosecutor, we reasoned, had impermissibly referred to facts not in evidence, namely, to the prospective juror's account of the "false" accusations he had faced that "washed out at the forensic interview stage[.]" *Id*. at 315. The prosecutor had then implied that, in contrast to the accusations against that individual, the victim's accusations against the defendant were "not false," because they had not "washed out"—an implication that, we determined, "exceeded the

bounds of the permissible." *Id* Additionally, the prosecutor had "distorted the burden of proof" by suggesting that the jury could convict the defendant if it found that he "should not reside with an adolescent girl." *Id.* at 316. We said that, rather than appealing to the jury's confidence in the evidence presented, the prosecutor had "appealed to the jurors' moral sensibility about an irrelevant circumstance * * *." *Id.* at 317.

Further, we concluded, beyond being improper, the prosecutor's comments had deprived the defendant of a fair trial and were therefore "cognizable as plain error." *Id.* We based that conclusion on four related circumstances. First, the prosecutor had offended the "fundamental" principle that "the state [must] prove every element of the offense beyond a reasonable doubt[.]" *Id.* Second, the "timing" of the prosecutor's comment about the burden of proof—at the very end of the rebuttal—had "exacerbated the risk that it would be prejudicial," because it had been the "last thing that the jury heard before beginning deliberations," rendering its likely impact "significant." *Id.* at 317-18. Third, the prosecutor had "compounded the error" by "giving the jury permission to ignore [the] defendant's fundamental right to proof beyond a reasonable doubt[.]" *Id.* at 320-21 (explaining court's conclusion that, for that reason, a curative instruction "would not have been sufficient to cure the prejudice inherent in the prosecutor's improper remarks"). And fourth, the case was "close," a "credibility contest" between the defendant and the victim. *Id.* at 321. Given those four related circumstances, we concluded that the prosecutor's comments were so prejudicial as to have denied the defendant a fair trial, clearing what we characterized as the "exceedingly high bar" for plain-error review in such circumstances. *Id.* at 328-29; *see also id.* at 321 (explaining that, under such circumstances, had the defendant raised an objection, the trial court's only lawful option would have been to declare a mistrial).

Upon concluding that the defendant had established plain error, we turned to the remaining question of whether to exercise our discretion to correct it, ultimately concluding that the "gravity of the error" and the "ends of justice" required us to reverse the defendant's convictions. *Id.* at 322, 329 (citing *Vanornum*, 354 Or at 630); *see Vanornum*,

354 Or at 630-31 (noting that decision to exercise discretion to correct an unpreserved error must be made with utmost caution, as doing so "undercuts the policies served by the preservation doctrine").

Our opinion in *Chitwood* did not alter the general principles of preservation or plain error. When a defendant asserts plain error based upon a prosecutor's allegedly improper arguments, it remains the defendant's burden as in any other case to prove that the claimed error is one of law, is obvious and not reasonably in dispute, and appears on the record. *See* 370 Or at 311. *Chitwood* did, however, establish two new principles that, in our view, were uniquely appropriate in the context of a plain-error challenge based on a prosecutor's jury argument. We discuss those principles briefly here.

First, this court recognized that, although a plain error is typically "attributable to the trial court," such an error can also be attributed to the prosecutor when a defendant's claim is that the trial court erred by failing to intervene *sua sponte* in response to the prosecutor's allegedly prejudicial comments. *Chitwood*, 370 Or at 312; *see also Ailes*, 312 Or at 380 (discussing the requirements for reviewing a plain error "committed" by the trial court); ORAP 5.45(3) (providing that a party's assignments of error must identify the "ruling" that is being challenged). However, in adopting that new perspective, *Chitwood* did not alter the requirements of plain error. Rather, that opinion merely foreclosed, as a discretionary consideration at the second stage of plain-error review, the argument that a defendant may have strategically chosen not to object to the purportedly improper argument. *See* 370 Or at 322-26 (discussing the Court of Appeals' reliance on that rationale and this court's approach to that issue and the related issue of invited error). Given the fact that, when plain error is premised upon a prosecutor's improper jury argument, it is the *prosecutor* (not the defendant or the trial court) who has created the defendant's predicament, we reasoned that it would not be fair to consider whether the defendant had somehow benefited by not objecting to the prosecutor's improper comment in determining whether to exercise our discretion on plain-error review. *Id.* at 326-27 (also noting that, in that case, nothing in the

record indicated that the defendant had somehow invited or otherwise encouraged the prosecutor's improper argument).

Second, *Chitwood* held that, to satisfy the plain-error requirement that the alleged error be "one of law," a defendant must prove that the prosecutor's comments were not just "improper," but "so prejudicial as to have denied [the] defendant a fair trial." *See Chitwood*, 370 Or at 312. To satisfy the "fair trial" requirement, we held, the defendant must show that the prosecutor's comments were "so egregious that, if the defendant had made a motion for mistrial, the trial court would have erred, as a matter of law, in denying it." *Id.* In other words, the prosecutor's comments must have been so prejudicial that an instruction by the trial court to the jury to disregard the comments "would not have been sufficiently curative" to ensure that the defendant received a fair trial. *Id.*; *see also id.* at 328 (noting that the standard sets "an exceedingly high bar").

In stating that requirement, the court sought to do two things. One was to adhere to the requirement that a plain error be an error of law. The court observed that, in the ordinary case, when a trial court is asked but declines to give a curative instruction or declare a mistrial, the court's decision is reviewed for abuse of discretion. *Id.* at 311. In turn, that decision would not constitute an abuse of discretion unless, as a result, the defendant had been denied a fair trial. *Id.* In other words, the defendant would not be entitled to reversal unless, "'under the circumstances as a whole, [the] defendant was denied the right to a fair trial, *as a matter of law*, by the events that transpired at trial.'" *Id.* at 312 (quoting *Davis*, 345 Or at 583 (emphasis added)). Thus, we concluded, to be an error of law, the effect of the prosecutor's improper argument must have been to deny the defendant a fair trial, which required a defendant to establish that the trial court's only lawful option—had the defendant objected—would have been to declare a mistrial, because no curative instruction would have been effective.[5]

_____

[5] Defendant contends that it should not matter whether a trial court *could* have ensured that a defendant received a fair trial had the court given a curative instruction; what matters, defendant argues, is whether the trial that a defendant actually received *was* fair. However, this case does not present an opportunity to consider that matter further.

We also sought to avoid providing for greater relief in plain-error cases than in preserved-error cases, which could encourage defendants to remain silent in the face of improper comments by prosecutors. We observed that, when a defendant objects to a prosecutor's comments at trial and thus preserves that objection for appeal, reversal is only warranted if "'it is beyond dispute that the prosecutor's comments were so prejudicial as to have denied defendant a fair trial.'" *Id.* at 312 (quoting *State v. Montez*, 324 Or 343, 357, 927 P2d 64 (1996)). For that reason, we held that it would not be sufficient on plain-error review for a defendant to show that the prosecutor's comments had been improper; rather, the defendant must show that the comments rendered the defendant's trial unfair, which, as noted above, requires the defendant to show that any curative instruction by the trial court would not have been effective. *Id.*[6]

B.   *Whether Defendant Has Demonstrated Plain Error*

We turn to whether defendant has demonstrated plain error under both the general principles of preservation and our decision in *Chitwood*. That raises the preliminary question of whether defendant has shown that the prosecutor's comments were "improper." 370 Or at 312 (to establish plain error based on a prosecutor's comments to a jury, the defendant must establish *both* that the comments were improper *and* that no curative instruction could have ensured a fair trial). If we were to conclude that the comments were improper, that would trigger the central inquiry established in *Chitwood*: whether the improper comments were "so prejudicial that an instruction to disregard them would not have been sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial." *See id.* And, if so—that is,

---

[6] As the foregoing indicates, part of our rationale in *Chitwood* for requiring a defendant to demonstrate that "an instruction to disregard" the prosecutor's comments would not have been "sufficiently curative to assure the court, in its consideration of all the circumstances, that the defendant received a fair trial" was that a defendant would need to make an equivalent showing to be entitled to reversal in the preserved context. 370 Or at 312. We acknowledge that that may not always be the case—a defendant whose timely request for a curative instruction is denied may, in fact, be able to establish reversible error even if an appellate court concludes that a curative instruction would have been effective. However, because that was not the only reason for imposing that requirement in *Chitwood*, we are not persuaded that its rationale has been significantly undermined.

if the prosecutor's improper comments were so prejudicial that, had defendant objected at trial, the trial court's only lawful option would have been to declare a mistrial—then defendant will have demonstrated plain error. *See id.*

Significantly, because the prosecutor's purportedly improper comments come before us on plain-error review, it is not enough if, in hindsight, we might agree that some jurors could have understood the prosecutor to have impermissibly commented on defendant's exercise of his right to trial; the same is true as to the possibility that the challenged comments somehow distorted the burden of proof or placed the state on equal footing with defendant in the jury's eyes. Rather, defendant must show that it is "obvious and not reasonably in dispute" that one or more of the prosecutor's statements would have had such an effect on the jury. *See id.* at 311 (describing general requirements for plain-error review (citing *Vanornum*, 354 Or at 629)). And here, for the reasons that follow, we conclude that it is not obvious and beyond reasonable dispute that the prosecutor's comments were improper—that is, because there was more than one way that the jury could have understood each of those comments, not all of which were impermissible, we cannot conclude that they were plainly improper. Because defendant has not made that necessary showing for purposes of plain-error review, we need not determine how the balance of *Chitwood*'s framework might otherwise apply.

Like the parties and the Court of Appeals, we first consider the prosecutor's second and third comments, which related to the "purpose of trial" and the existence of "a controversy of fact." Those comments were delivered in close succession near the end of the prosecutor's rebuttal argument, as follows:

> "*I think oftentimes when you have [t]rial, [the] jury might have a misconception about the purpose of [t]rial.* The [t]rial is this. Every person has the absolute right to a criminal [t]rial in every case. That should be celebrated. The [s]tate should have the obligation of proving the case to the jury. In this case, the [s]tate submits to you that it has demonstrated that evidence through the production of the testimony. Every element is satisfied. *Just because there is a [t]rial doesn't necessarily mean there's a controversy of fact.*

Everybody has a right to [t]rial. I think we should celebrate this process, and I think you should go back and deliberate and return a guilty verdict to every charge. Thank you."

(Emphases added.)

The state argues that, in making the comments emphasized above, the prosecutor neither "impermissibl[y] comment[ed] on defendant's invocation of the constitutional right to trial" nor "distort[ed] the presumption of innocence," as the Court of Appeals' opinion concluded. In the state's view, the prosecutor's comments did not "imply that only guilty people invoke the right to trial," nor did they suggest any "negative inference" from defendant's invocation of the right to trial; rather, the prosecutor was "simply conveying to the jury that, given the evidence presented, its decisions regarding many of the elements at issue would be simple." The state further observes that it is not legally incorrect for the prosecutor to "point[] out that, just because there is a trial, it does not necessarily follow that there is a factual controversy."

Defendant counters that the prosecutor's comments were a "thinly veiled denigration" of defendant's exercise of his constitutional right to trial. According to defendant, the prosecutor's "faux 'celebration'" of that right only "served to reinforce [the prosecutor's] point that the trial was a mere formality because defendant had not seriously created a factual controversy." Defendant also argues that, by suggesting the absence of any "controversy of fact," the prosecutor implied that "defendant's testimony did not count as 'evidence.'" Through that implicit characterization, defendant reasons, the prosecutor was "telling the jury" either that "defendant had lied in his testimony"—which defendant contends would constitute "vouching"—or that the prosecutor "knew of some additional evidence to support the state's case"—which defendant contends would be suggestive of facts not in evidence.

Because the prosecutor's comments arguably evoke distinct principles—a defendant's right to trial versus the presumption of innocence and the state's related burden of proof—we consider each comment both separately and in combination with the others, starting with the prosecutor's comment that "oftentimes" the jury "might have a

misconception about the purpose of trial." According to defendant, that was an impermissible comment on his exercise of the right to trial, one that "denigrat[ed]" that right. To be sure, references to a defendant's exercise of a constitutional right are fraught with risks. As we observed in *Chitwood*, this court has long held that it is "usually reversible error" to draw the jury's attention to a defendant's exercise of a constitutional right "*if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury.*" 370 Or at 319-20 (discussing right to remain silent (emphasis added; internal quotation marks omitted)). But as the emphasized language from *Chitwood* suggests, context matters. And the context here arguably belies defendant's suggestion that the state's reference to defendant's trial somehow denigrated his right to have one.

For example, immediately after referencing the "purpose of trial," the prosecutor correctly observed that "[e]very person has the absolute right to a criminal trial," followed by an agreement that the "state should have an obligation of proving the case to the jury." *See* US Const, Amend VI (guaranteeing the right to trial in criminal cases); Or Const, Art I, § 11 (guaranteeing the same right); *Sullivan v. Louisiana*, 508 US 275, 277-78, 113 S Ct 2078, 124 L Ed 2d 182 (1993) (providing that the state bears the burden of proving all elements of criminal offenses under the Fifth and Fourteenth Amendments to the United States Constitution). Moreover, whether or not he intended it to clarify his understanding of the "purpose" of a trial, we see nothing objectionable in the prosecutor's description of the *mechanics* of a criminal trial, in which, as noted, he accepted the state's burden of proof, explained his view that the state had met that burden here through the production of witness testimony, and argued that the state had discharged its duty to prove every element of each offense. Defendant downplays the significance of those appropriate comments by suggesting that the prosecutor's accompanying statement that the right to trial "should be celebrated" was a "faux" celebration of that right. But we decline defendant's implicit invitation to speculate whether the prosecutor's statement that the right to trial should be celebrated was in fact sincere, particularly on plain-error review.

    We recognize that we cannot tell from the foregoing context what "misconception" the prosecutor may have been concerned about. But, significantly, that comment did not, for example, suggest that the jury could infer defendant's guilt from his exercise of the right to trial. *See State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600 (1977) (expressing "no doubt" that it is usually reversible error to admit evidence of a defendant's exercise of constitutional rights where the jury is likely to draw prejudicial inferences from that evidence). Conceivably, the prosecutor believed that the trial had been a waste of time and hoped that the jurors would agree. But whatever the prosecutor's intended meaning was, it is certainly not obvious and beyond reasonable dispute that, by referring to any "misconception" a jury may have about the "purpose of trial," the prosecutor was drawing the jury's attention to defendant's exercise of his right to trial in such a manner that the jury was likely to draw prejudicial inferences from that exercise. *See Chitwood*, 370 Or at 320 (citing *Smallwood*, 277 Or at 505-06); *see also State v. Soprych*, 318 Or App 306, 507 P3d 276 (2022) ("A prosecutor's reference to or comment on a defendant's invocation of a constitutional right * * * may prejudice a defendant's ability to have a fair trial if the jury is likely to draw a negative inference from the exercise of that right. * * * The fact that a prosecutor's conduct is not intentional does not affect a defendant's fundamental right to a fair trial." (Internal quotation marks omitted)).

    Moreover, even in conjunction with the "controversy of fact" comment, we do not consider it obvious and beyond dispute that the "purpose of trial" comment exceeded the permissible bounds of a closing argument. In defendant's view, the two comments together suggested that defendant's trial was a "mere formality." But neither the manner in which the case was tried nor the context of those comments compel the conclusion that the jurors were likely to have understood the prosecutor's argument as somehow permitting them to disregard their obligations to carefully and impartially consider all the evidence. Rather, given the multiple eyewitnesses, the presentation of video evidence, defendant's own testimony, and defense counsel's tacit acknowledgment that at least some of the charges might have been proved,

the jury could reasonably have understood the prosecutor simply to be pointing out that, even though defendant had entered pleas of not guilty and exercised his right to trial as to every charge, not every factual allegation was genuinely in dispute. That is particularly so because the defense chose to focus less on defendant's observable actions during the incident and more on the legal significance of those actions, which was reflected through defendant's testimony about his awareness of the officers' identities, his beliefs as to Pendleton's authority, and his own state of mind. As a result, the prosecutor was permitted to argue to the jury his perspective of what defendant's trial ultimately reduced to. *See State v. Sperou*, 365 Or 121, 130, 442 P3d 581 (2019) (observing that "as advocates for the state's cause, [prosecutors] have wide latitude to make *arguments* from the evidence" (emphasis in original)).

We acknowledge that the prosecutor's words could have been chosen more carefully. At least some of the factual allegations were expressly disputed at trial. For example, defendant denied that he had been aware of the arresting officers' identities and that he had been "yelling and screaming" in the parking lot. But to the extent that the prosecutor's comment—that not every trial involves "a controversy of fact"—might otherwise be understood to suggest that *no* facts were in dispute in this trial and that there was nothing left for the jury to do in that regard, the surrounding argument again belies that reading. That comment immediately followed the prosecutor's recognition of the state's "obligation of proving the case to the jury" and contention that the state had "demonstrated that evidence through the production of the testimony," such that "[e]very element [had been] satisfied." And based on that presentation of evidence, the prosecutor asked the jury to "go back and deliberate and return a guilty verdict to every charge." Given that context, one could argue that the most natural reading of the prosecutor's "controversy of fact" comment was *not* that the entire trial had been a mere formality, but that the state had so thoroughly proved its case in the course of trial that there should be little question in the jurors' minds as to what verdicts to reach. More importantly for present purposes, however, it is not obvious and beyond reasonable dispute that

the prosecutor's argument was likely to have the impermissible effect that defendant postulates.

Our conclusion that the "controversy of fact" comment did not render the "purpose of trial" comment plainly improper also supports the conclusion that the "controversy in fact" comment did not itself obviously distort the presumption of innocence, as the Court of Appeals concluded, or improperly "impugn" defendant's credibility or implicitly reference evidence outside the record, as defendant contends. We understand the Court of Appeals' rationale to have been that, by suggesting that the trial had presented no factual disputes for the jury to resolve, the "controversy of fact" comment impermissibly implied that defendant bore some obligation of producing evidence to raise such a dispute, when the presumption of innocence in fact relieved him of any such burden. And defendant's view is that, even though the defense *had* produced contrary evidence through defendant's testimony, the prosecutor's comment wholly discounted that evidence, which defendant contends had the effect of either impugning defendant's testimony or insinuated that the prosecutor "knew of some additional evidence to support the state's case[.]" But once more, the "controversy of fact" comment directly followed the prosecutor's recognition of the state's burden and related reference to the evidence presented at trial. Nothing in the prosecutor's argument clearly reflected the prosecutor's personal opinion of defendant's testimony so as, in defendant's view, to render it "vouching." Nor did it suggest, as defendant contends, that the prosecutor knew of additional evidence of defendant's guilt that had not been presented—to the extent that the prosecutor suggested that the jury should not believe defendant's testimony, the jury would more likely have understood the prosecutor to be relying on the evidence presented at trial that contradicted that testimony, not on the prosecutor's opinion or knowledge of anything outside the record. Moreover, because the disputed comment immediately followed the prosecutor's acknowledgment of the state's burden of proof and the prosecutor's argument that the state's evidence met that burden, we cannot agree with the Court of Appeals' evident conclusion that the jury would have understood the prosecutor as improperly shifting the burden of

proof to defendant or otherwise diminishing the presumption of innocence.

Turning, finally, to the prosecutor's third (but earlier) comment, which the prosecutor made near the beginning of rebuttal, we again conclude that it is not obvious and beyond reasonable dispute that the comment would have given the jury an incorrect understanding of the law, as required for it to be plainly improper. In context, the prosecutor stated:

> "[Defense counsel] suggested that [defendant] might be guilty of some but not all. That phenomen[on], that sort of argument is geared toward the psychology of a jury doing things (inaudible), that maybe you'll return some guilty verdicts here (inaudible). Really what the jury's job is to do is due consideration of every single charge. The repercussions of whether he's guilty or not, you'll see that falls on the [j]udge later on.

> "For you, it's to determine if each of those offenses, in fact, occurred. And so please give each of those offenses their due consideration to determine whether they, in fact, occurred in the way that they're charged and that he's guilty of them or not guilty of them. *The [s]tate also in this justice system is entitled to due process of your consideration.* So please review each of those charges and take a look at them."

(Emphasis added.)

The state contends that the jury was unlikely to have interpreted the prosecutor's reference to "due process" as an argument that the state "was entitled to due process as a matter of federal constitutional law." Given the broader context of that comment, the state ventures that, "[a]t worst," the prosecutor's reference was an "inadvertent slip of the tongue." Defendant argues in response that the "effect" of the prosecutor's comment "was to put the state and the defense on equal footing in the eyes of the jury, which further undermined the presumption of innocence and the state's burden of proof."

Defendant's argument is itself undermined by our earlier conclusion that the other disputed comments did not improperly implicate the presumption of innocence or the state's burden of proof. Furthermore, when read in context, we do not view the prosecutor's comment as likely to have

confused the jury as to the state's "rights" at trial, much less to have placed the state on equal footing with defendant in the jury's eyes. For one thing, the prosecutor did not say that the state was entitled to "due process"; instead, the prosecutor referred to "the due process *of your consideration.*" (Emphasis added.) That phrase echoed two earlier references to "due consideration":

- "Really what the jury's job is to do is *due consideration* of every single charge."

- "And so please give each of those offenses their *due consideration* to determine whether they, in fact, occurred in the way that they're charged and that he's guilty of them or not guilty of them."

(Emphases added.)

It was immediately thereafter that the prosecutor commented:

- "The [s]tate also in this justice system is entitled to *due process of your consideration.*"

Given that context, the prosecutor did not appear to be contending that the state was entitled to constitutional due process—an argument that clearly *would* be at odds with the law and therefore indisputably improper. The fact that the prosecutor twice used the phrase "due consideration" before the challenged phrase "due process of your consideration" tends to support the state's interpretation that the latter was essentially a "slip of the tongue." Moreover, whatever the prosecutor may have intended to convey through the reference to "due process," the "of your consideration" clause indicates that the prosecutor was *not* suggesting that the state was entitled to the full panoply of rights that due process extends to criminal defendants. The prosecutor expressly limited his assertion of rights on behalf of the state to the purported right to the jury's "consideration." And regardless of whether we would characterize "consideration" as an "entitle[ment]" extended to the state by our system of justice, as the prosecutor suggested, we believe that the jurors could have understood the prosecutor to be asking that they carefully consider *both* sides' arguments, which would neither disturb the constitutional balance between the state and defendant nor ask

the jurors to do anything but discharge theirs duties with appropriate care. Thus, even if it is plausible that the jury could have understood the prosecutor's "due process" comment to convey defendant's suggested meaning, we conclude that defendant has not shown it to be obviously improper.

In sum, we conclude that, none of the prosecutor's comments, in isolation or in combination, were obviously and indisputably improper. We therefore need not determine whether those comments met the requisite level of prejudice to warrant reversal on plain-error review—that is, whether the comments were "so prejudicial as to have denied defendant a fair trial." *See Chitwood*, 370 Or at 312.[7]

### III.   CONCLUSION

Defendant has not established plain error in his case. To establish "plain" error, a defendant must satisfy *all* the requirements of plain error. In a plain-error challenge based on the prosecution's purportedly improper arguments to the jury, that requires—both before and after our decision in *Chitwood*—that the defendant establish that it is obvious and beyond reasonable dispute that the prosecutor's statements were improper, whether because they misstated the law, adversely commented on the defendant's exercise of a constitutional right, referenced matters not in evidence, or otherwise could only be understood to have urged the jury to draw an impermissible inference. Here, although certainly inartful, the prosecutor's challenged comments did not rise to that level. It follows that we need not consider whether those comments arose to the level required for reversal on plain-error grounds under *Chitwood*, and that the Court of Appeals erred in reversing on those grounds. We therefore reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[7] In addition to arguing that the claimed error constitutes plain error, defendant argues that we should clarify that an appellate court should only consider "hypothetical curative instructions that a trial court could have given" at the discretionary step of plain error review, rather than at the first step. Because we conclude that defendant has not met his burden of proving that the prosecutor's comments were improper, we do not reach defendant's additional argument. Nor do we comment on the merits of that argument.

**BUSHONG, J.,** concurring.

The majority opinion concludes that the Court of Appeals erred in holding that the prosecutor's rebuttal closing argument was sufficiently prejudicial to warrant reversal of defendant's convictions on plain error grounds. I agree. I write separately for two reasons. First, I am concerned that our existing plain error framework, first articulated in *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991), might not provide predictable resolutions for the bench and bar in criminal cases. Second, I believe that prosecutors, defense attorneys, and trial courts could benefit from clear guidance from this court on when a prosecutor's closing arguments are improper and when they are not. Today's majority opinion and our prior cases do not provide the type of clear guidance that is needed, in my view. Although I fully join in the majority opinion's analysis of the propriety of the prosecutor's comments that are at issue in this case, I take this opportunity to offer some additional guidance in this area.

As the Court of Appeals has pointed out, our decision in *State v. Chitwood*, 370 Or 305, 518 P3d 903 (2022), "has created uncertainty" as to one element of our plain error review analytical methodology. *State v. Arena*, 336 Or App 291, 300, 560 P3d 757 (2024) (Aoyagi, J., dissenting).[1] That uncertainty involves the application of the requirement that, to qualify as a plain error, the error must be "obvious and not reasonably in dispute." *Id.* (quotation marks omitted); *see also State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013) (noting the parties' dispute over "whether the claimed error was obvious and not reasonably in dispute"). That requirement traces back to *Ailes*, where we adopted our current plain error analytical framework by "[e]xtrapolating" principles from prior cases. 312 Or at 382. Since adopting that methodology—in a civil case—this court and the Court of Appeals have applied it many times in criminal cases, but never after meaningfully grappling with whether it was the best framework for analyzing unpreserved errors in those cases, though the state urged us to do so in at least one case. *See State v. Steen*, 346 Or 143, 154, 206 P3d 614

---

[1] The panel majority agreed with the dissenting opinion that this court should clarify how *Chitwood* should be applied. *Arena*, 336 Or App at 298 n 3.

(2009) (noting the state's argument that that case presented an "appropriate vehicle" to reconsider that methodology).

Neither party has asked us to reconsider that methodology in this case, and I am not suggesting that we should have done so. However, in an appropriate future case, it is worth considering, for example, whether describing an error as "plain" and "obvious" is appropriate, given that the trial judge did not catch the error. To me, it would make more sense simply to describe an assignment of error on appeal that has not been preserved for appellate review as an "unpreserved" claim of error.[2] It is also worth considering whether every unpreserved error in criminal cases should be analyzed and treated the same way under a single analytical methodology. Unpreserved errors can arise in many different contexts, both procedural and substantive. Some procedural errors—even unpreserved ones—can substantially affect the rights of a criminal defendant. The same may be true of unpreserved sentencing errors, for example. In most cases, other types of unpreserved errors, such as evidentiary issues, jury instructions, and discretionary decisions, traditionally have not been thought of as "errors" at all absent an objection and a ruling by the trial court. The same may be true of inappropriate comments by counsel at various points during a jury trial. My point is not to suggest how those different types of unpreserved errors should be addressed; it is simply to note that the issues may be sufficiently different to justify a different analysis. Perhaps one size does not fit all in the context of a criminal case.

As for guidance in determining whether statements made by a prosecutor during closing arguments are improper or not—regardless of whether they might be grounds for reversal on plain-error review—I offer the following comments. First, the primary issue in most criminal trials is whether the state has met its burden of proving the elements of each charged offense beyond a reasonable doubt. Thus, it is always appropriate for a prosecutor to argue from the evidence that the state has met its burden, and to explain why.

---

[2] The dissenting opinion in *Chitwood* pointed out another "novel conception" in the terminology used by this court when it described the "error" in that case as having been committed by the prosecutor, not the court. *Chitwood*, 370 Or at 331 (Garrett, J., dissenting).

But the *reason* the court is conducting a trial in a particular case is rarely, if ever, relevant. Thus, a prosecutor should not argue to a jury, whether in *voir dire* or trial, about "why we are having a trial" in a criminal case.[3] Not only is such a comment irrelevant; it also comments—at least implicitly—on the fact that a defendant has exercised their constitutional right to a trial by jury. Prosecutors should not be making those comments. If they do, defense attorneys should object, and trial courts should sustain the objection and, at a minimum, instruct the jury to disregard the comment.

Second, a prosecutor should never attempt to usurp the role of the trial judge by attempting to instruct the jury on the law. The jury instructions provided by the court give the jury the relevant law to decide the case. It is certainly permissible for a prosecutor to use the jury instructions given by the court to explain to the jury why the evidence is sufficient to establish beyond a reasonable doubt each element of the charged offense. But it is never permissible for a prosecutor to argue to the jury that the law is anything other than what is contained in the jury instructions.[4]

Third, in a criminal case that may turn on the credibility of one or more witnesses, a prosecutor can always

---

[3] Two of the prosecutor's comments that are at issue in this case fall within the "why are we having a trial" category. First, the prosecutor speculated that jurors "might have a misconception about the purpose of a trial." Second, the prosecutor stated that, "[j]ust because there is a trial doesn't necessarily mean there's a controversy of fact." Suggesting that a juror might have a "misconception" about the purpose of a trial, or mistakenly thought that there must be a factual controversy just because "there is a trial" is improper, in my view. That does not necessarily conflict with the majority opinion's conclusion that the statement was not plainly improper.

[4] In *Chitwood*, for example, the prosecutor sought to instruct the jury about what "moral certainty" means, stating that, "if you determine that [the defendant] should not reside with an adolescent girl, that's your moral certainty and I have proven my case beyond a reasonable doubt." 370 Or at 309. In this case, the prosecutor's comment that, in our justice system, the state "is entitled to due process of your consideration" is, in my view, an impermissible comment on the law that goes beyond the jury instructions. First, our system of justice protects the rights of criminal defendants in many ways because their liberty is at stake, but the law does not "entitle" the state to anything. Second, the prosecutor phrased the suggested "entitlement" by using a legal term—"due process"—that can only serve to confuse the jury as to what the law requires. Granted, that phrasing may have been, as the state suggests, a "slip of the tongue," but it was still improper. If the defense attorney had objected, the legally correct ruling would have been to sustain the objection and, at a minimum, instruct the jury to disregard the comment.

argue that the jury should find the testimony of the state's witnesses to be more credible than the testimony of the defense witnesses. And the prosecutor can use the standard jury instruction on "evaluating witness testimony" and any other instructions given by the court to argue why the jury should credit some testimony more than others. But the prosecutor should never suggest or insinuate that *the prosecutor*—or the police, or another witness—believes that one witness is more credible than another. That would be vouching, which is always impermissible in a criminal case.

Fourth, a prosecutor should never argue or suggest to the jury that the defendant has the burden of proving anything, except when the law places the burden of proving an affirmative defense on the defendant. Such a comment undermines the presumption of innocence provided by our constitution, risks commenting improperly on a defendant's constitutional right not to testify or present a defense, and may suggest, at least implicitly, that, because the defendant did not proclaim his innocence at the time of the arrest or anytime thereafter, he must be guilty of the charged offense. A proper prosecutorial argument would avoid those comments, focusing instead on whether the evidence in the case satisfies the state's burden of proving each element of the charged offense beyond a reasonable doubt.

Fifth, a prosecutor should never suggest or insinuate that there is more evidence of the defendant's guilt than what the prosecutor has presented at trial. Such a suggestion is implicit in any contention that the police arrested a defendant because they were convinced—based on everything the police knew—that the defendant was guilty of a crime. Such a suggestion is objectionable as both vouching and possibly as referring to facts not in evidence. Similarly, any suggestion or insinuation that the state is prosecuting the defendant because the prosecutor's office has concluded—again, based on everything that the prosecutor's office has uncovered—that the defendant is guilty of the charged offense amounts to either impermissible vouching, an implicit reference to facts not in evidence, or both. Prosecutors should not make those comments or any others of the same ilk. If they do, defense attorneys should object, and trial courts should

sustain the objection and, at a minimum, instruct the jury to disregard those statements.

Finally, prosecutors must resist the temptation to attempt to "level the playing field" in a criminal trial. That might seem fair, but it is not the way that criminal prosecutions work. For example, it is very common for a defense attorney to point out that the state has failed to present additional evidence—DNA evidence, fingerprints, eyewitness testimony, for example—that might be probative of the defendant's guilt. But prosecutors generally cannot comment on a defendant's failure to present evidence. For example, prosecutors cannot point out that the defendant has failed to testify, and they typically cannot comment on a defendant's failure to present evidence that might be probative of the defendant's innocence. The seeming unfairness of that situation is the foundation of our criminal justice system. It protects the defendant's constitutional rights, preserves the presumption of innocence, and ensures that anyone charged with a crime is convicted only if the state proves beyond a reasonable doubt that the person is guilty.[5]

Those are a few examples of prosecutorial comments that are inappropriate. It is not an exclusive list; there are others. *See* Michael D. Cicchini, *Combating Prosecutorial Misconduct in Closing Arguments*, 70 Okla L Rev 887 (2018). Having offered those comments, I join in the majority opinion.

James, J., joins in this concurring opinion.

---

[5] The prosecutor's comment in this case that the state is "entitled" to the "due process of [the jury's] consideration" may violate that principle. Again, although the defendant is constitutionally entitled to many things during a criminal trial—the right to confront witnesses, the right against self-incrimination, and the right to a fair trial to an impartial jury, among others—the state is not "entitled" to anything in a criminal trial.